GUARANTY NATIONAL INSURANCE COMPANY, Plaintiff,

v.

BEELINE STORES, INC., Defendant.

Civil Action No. CV–96–T–104–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 30, 1996.

---

J. Marshall Gardner, Vickers, Riis, Murray & Curran, Mobile, AL, for plaintiff.

Nicholas J. Cervera, Cervera & Ralph, Troy, AL, for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In this federal lawsuit, plaintiff Guaranty National Insurance Company is seeking a declaration that it has no contractual duty, under a policy insuring against negligent administration of an employee benefit program, either to defend or indemnify defendant Beeline Stores, Inc. in an underlying state lawsuit, *Smith v. Beeline Stores, Inc., et al.,* civil action no. CV–95–1142–TH, pending in the Circuit Court of Montgomery County, Alabama. Guaranty National seeks relief pursuant to the Declaratory Judgment Act of 1934, which provides that, "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). The insurance company has invoked the diversity-of-citizenship jurisdiction of this court. 28 U.S.C.A. § 1332. This matter is now before the court after submission of a joint factual record by the parties, accompanied by briefs and response briefs.

Having reviewed the documentary evidence and legal briefs, the court concludes that Guaranty National is entitled to the declaratory relief it seeks with regard to providing legal defense to Beeline, but that it is premature to decide the issue of Guaranty National's duty to indemnify Beeline.

## I. BACKGROUND

The following facts are undisputed. Guaranty National issued a package commercial insurance policy to Beeline, which included employee benefit liability insurance. The policy period commenced on July 1, 1994, and expired on July 1, 1995. Under the policy, the insurer would pay "those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error or omission of the insured ... in the administration of [its] employee benefit program." The policy covers acts that occurred only after the commencement date and during the term of the policy.

Barbara Smith was working as the manager of a Beeline store in Alabama in February 1994 when she sustained an on-the-job injury. She reported her injury promptly to her supervisor, who attempted to contact the

head office of Beeline for instructions, apparently without initial success. Rather than wait upon Beeline's response, Smith used her husband's insurance policy to obtain medical treatment. Over the ensuing months, Smith was forced to miss a number of days of work to recuperate and receive further treatments for her back injury, but believed she had reached an informal accommodation with her employer Beeline about retaining her job and some salary while away. However, Smith was terminated from her job in late July 1996, and was unsuccessful in obtaining workers' compensation benefits, despite repeated overtures to Beeline and the claims adjuster. She filed a state lawsuit against Beeline, the claims adjuster, and the self-insured workers' compensation fund, claiming denial of workers' compensation benefits, outrageous conduct by defendants relating to her termination and denial of her benefits, and injurious misrepresentations about her job status.

## II. DUTY TO DEFEND

 An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured. *Alfa Mutual Ins. Co. v. Morrison,* 613 So.2d 381, 382 (Ala.1993); *Ladner & Co. v. Southern Guar. Ins. Co.,* 347 So.2d 100, 102 (Ala.1977). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.,* 585 So.2d 1365, 1367 (Ala.1991) (internal citations omitted). Where the allegations of the complaint show that no injury alleged is within the coverage of the policy, however, or where the allegations are ambiguous, "the court is not limited to the bare allegations of the complaint ... but may also look to facts which may be proved by admissible evidence." *Chandler,* 585 So.2d at 1367 (internal citations omitted); *see also Perkins v. Hartford Ins. Group,* 932 F.2d 1392 (11th Cir.1991).

 Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *see Colonial Life & Accident Ins. Co. v. Collins,* 280 Ala. 373, 194 So.2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *See U.S. Fidelity & Guar. Co. v. Armstrong,* 479 So.2d 1164, 1168 (Ala.1985). If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Altiere v. Blue Cross & Blue Shield,* 551 So.2d 290, 292 (Ala.1989). However, if there is no ambiguity, insurance contracts must be enforced as written, and courts should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. *Id.*

 The court's starting point, then, is the policy and the complaint. *First count:* This count of the complaint states that Smith is entitled to receive workers' compensation benefits, but "defendants have denied the plaintiff's workmen's compensation claim." Although the complaint does not specify which defendants are responsible for this denial, or what exactly their culpability is based upon, it does state that a "[c]ontroversy has arisen" from denial of those benefits, which statement does not seem to allege an oversight or omission, but rather implies a knowing and deliberate refusal to provide benefits. Moreover, since the claims adjuster and the workers' compensation insurance carrier are the only defendants who it could properly be said have the power or duty either to approve or deny coverage of a claim, the court reads this count as making no overt complaint against Beeline.

The court, following *Chandler,* has also carefully examined the factual record submitted in this case, and is unable to find clear support in it for a negligence cause of action against Beeline. Smith, in her extensive deposition testimony, never once alludes to Beeline as having negligently failed to perform its duty to her as an employee, causing her to be wrongfully denied workers' compensation benefits. At times, Smith does allege that her employer, though knowing of

her injury, should have, but failed to report it to the insurer; but upon closer questioning Smith not only admits that she has no reason to believe Beeline had reason to know before July 28 that she wanted workers' compensation coverage, but also confesses her reluctance to request that her employer file a claim on her behalf for fear that doing so would somehow put her job in jeopardy. Smith also repeatedly avers that as of July 28, 1994, she began to make written demands upon Beeline for workers' compensation benefits, whereupon she was contacted by the claims adjustment firm for information about her medical record. The clear implication from Smith's testimony is that Beeline did in fact pass along her claim to the insurance carrier or its claims adjuster promptly after this notification from Smith. In short, this count is a straightforward claim for workers' compensation benefits, and so is unrelated to the area of coverage of the Guaranty National policy, which only insures against Beeline's negligent administration of its employee benefit programs.

■ *Second count:* This count of the lawsuit, insofar as it pertains to Beeline, alleges "outrageous conduct" through intentional failure to timely report Smith's on-the-job injury to the claims adjuster, and through firing her under false pretexts. An outrage claim for intentional infliction of emotional distress, under Alabama law, requires a showing of extremely outrageous, willful conduct, or conduct so reckless as to equal willfulness. *Continental Casualty Ins. Co. v. McDonald,* 567 So.2d 1208, 1210–11 (Ala.1990). While an intentional infliction of distress claim may be brought against a carrier who outrageously denies a claim, *see id.,* this obligation has no bearing on an insurer's duty to defend against such a claim under a policy limited on its terms to defense of negligence actions. Moreover, Guaranty National shows, and the record amply supports, that the policy explicitly excludes coverage

for malicious or criminal acts or omissions, which conduct is but the departure point for an outrage claim. *See* Restatement (Second) of Torts § 46 cmt. d (1965) (not enough that tortfeasor acts with intent which is tortious or even criminal, or intended to inflict emotional distress, or engages in conduct which has been characterized as malice). The policy further excludes actions for failure to comply with the mandatory provisions of any law concerning workers' compensation, failure to perform contracts, or wrongful termination of an employee. Those exclusions cover the whole and sum of Smith's allegations in this count.

■ *Third count:* This count alleges intentional misrepresentations by Beeline regarding Smith's job status while out from work. Smith claims Beeline management assured her that her job would be safe and she would continue to receive some or all of her salary while she remained unable to work. This third count falls entirely within policy exclusions barring coverage for claims relating to dishonest or fraudulent acts, contract performance, wrongful termination, and so forth. Nothing in the record before the court contradicts this conclusion.[1]

### III. DUTY TO INDEMNIFY

■ Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial. So a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue. *Ladner & Co., Inc. v. Southern Guaranty Ins. Co.,* 347 So.2d 100, 104 (Ala.1977). *See also Home Ins. Co. v. Rice,* 585 So.2d 859, 861 (Ala. 1991); *Tapscott v. Allstate Ins. Co.,* 526 So.2d 570, 573–75 (Ala.1988). That is why the Sev-

1. The parties dispute whether the events that gave rise to the underlying lawsuit occurred within the timeframe of the policy's coverage. Because the court finds nothing in the complaint or the record to suggest that any of Beeline's complained-of actions might conceivably fall within the area of coverage of the policy, and

strong support that those actions are specifically excluded from coverage, the issue of whether those actions fall within the period of coverage need not be addressed here. Guaranty National will be afforded the declaratory relief it seeks with regard to its duty to defend Beeline in the *Smith* lawsuit.

enth Circuit Court of Appeals recently stated that "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Nationwide Insurance v. Zavalis*, 52 F.3d 689, 693 (7th Cir.1995).

■ Because this lawsuit has been brought under the Declaratory Judgment Act and because it has been brought in federal court, an issue of ripeness that may be peculiar to federal courts is raised. *First*, the Constitution restricts the exercise of judicial power to "cases" and "controversies." U.S. Const. art. III, § 2. The Declaratory Judgment Act, "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision," *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937), and thus "is operative only in respect to controversies which are such in the constitutional sense." *Id.*[2] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.... It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

■ *Second*, the Declaratory Judgment Act states that a court "*may* declare the rights and other legal relations of any interested party seeking this declaration." 28 U.S.C.A. § 2201 (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon

the litigant.'" *Wilton v. Seven Falls Co.*, —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)). Therefore, "[t]here is ... nothing automatic or obligatory about the assumption of "jurisdiction" by a federal court to hear a declaratory judgment action.... Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" *Wilton*, —— U.S. at ——, 115 S.Ct. at 2143 (quoting E. Borchard, Declaratory Judgments 313 (2d ed. 1941)). Emphasizing the "unique breadth of this discretion," the Supreme Court has stated that it is "more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at ——, 115 S.Ct. at 2144.[3]

■ Here, Beeline could prevail in the underlying lawsuit. With this result, the issue of whether Guaranty National must indemnify Beeline would be moot, and the court would never have to reach the issue. The time and effort the court and the parties would have put toward resolving the issue would be wasted. For these reasons, the court concludes that the issue of indemnification is not sufficiently ripe to present a "case" or "controversy" and that, if there were, the court would still, in the exercise of its discretion, decline to provide declaratory relief.[4]

**2.** "The word 'actual' is one of emphasis rather than of definition." *Aetna Life Ins.*, 300 U.S. at 240–41, 57 S.Ct. at 463.

**3.** A state court not constrained by these factors might be able to hear declaratory judgment matters that a federal court cannot.

**4.** Because the decision whether to provide a defense must be made at a preliminary stage in the

proceedings, an insurer's duty to defend can be broader than its duty to indemnify. *Burnham Shoes, Inc. v. West Amer. Ins. Co.*, 504 So.2d 238, 241 (Ala.1987); *see also Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir.1993); *U.S. Fidelity & Guaranty Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985); *Lawler Machine & Foundry Co. v. Pacific Indem. Ins. Co.*, 383 So.2d 156, 157 (Ala.1980).

## IV. CONCLUSION

The court concludes that the employee benefits liability policy issued by Guaranty National does not apply to any of the claims against Beeline presented in the underlying state lawsuit by Smith. Consequently, Guaranty National has no obligation to defend Beeline in that lawsuit. However, the question of whether Guaranty National might ultimately be responsible for indemnifying Beeline against any losses accruing in that lawsuit is not timely brought before this court. The court therefore grants Guaranty National's request for declaratory relief in part and denies it in part.

An appropriate judgment will be issued.

## JUDGMENT

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) Plaintiff Guaranty National Insurance Company's request for a declaration that it has no duty to defend defendant Beeline Stores, Inc., in the lawsuit, *Smith v. Beeline Stores, Inc., et al.,* civil action no. CV–95–1142–TH, pending in the Circuit Court of Montgomery County, Alabama, is granted, and it is DECLARED that plaintiff Guaranty National Insurance Company has no duty to defend defendant Beeline Stores, Inc., in said matter.

(2) Plaintiff Guaranty National Insurance Company's request for a declaration that it has no duty to indemnify defendant Beeline Stores, Inc. for any liability that may result from the *Smith* lawsuit is denied without prejudice.

It is further ORDERED that costs are taxed against defendant Beeline Stores, Inc., for which execution may issue.